*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BORK, Minors.

UNPUBLISHED
June 9, 2022

No. 358708
Wayne Circuit Court
Family Division
LC No. 2021-000374-NA

Before: CAMERON, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's ordering terminating his parental rights to the minor children, SEB and MNB, under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*i*) and (*ix*).[1] We affirm.

## I. BACKGROUND

During two interviews in February 2021, five-year-old SEB disclosed to two different forensic interviewers that respondent sexually abused her by touching her vagina with his penis and finger, having her rub lotion on his penis, and rubbing his penis in front of her until he ejaculated. At the time, respondent had custody of SEB, and MNB resided with the children's biological mother, non-respondent Amber Woodby. Following a preliminary hearing, SEB was removed from respondent's care and placed with Woodby.

Petitioner then moved to have SEB's statements from the two forensic interviews admitted under MCR 3.972(C)(2) and MRE 803(24). The trial court held a hearing on the motion on July 28, 2021. Stephanie Green, a forensic interviewer with Kids Talk Children's Advocacy Center, testified that she conducted a forensic interview of SEB on February 17, 2021, during which SEB disclosed that she was sexually abused by her father. According to Green, SEB identified her father as respondent, and "said that [she] and her father take showers together without any clothes, and they hug. And she referred to his penis touching her privacy. She said that—that—that her

---

[1] Petitioner also sought termination of respondent's parental rights under MCL 712A.19b(3)(a), but the trial court declined to make any findings on that ground.

dad touches her privacy. She said also that they lay on the bed together without any clothes." Green testified that SEB clarified that her "privacy" was "her vagina, and she pointed to it." Green said that SEB also disclosed that "[her father] put lotion on his private, and he goes up and down [with his hand], and puke comes out, and she said it's like spit and it's the—it's white stuff. And she also said that she rubs lotion on his private as well." According to Green, SEB also "said that [her father] put his penis in her privacy, they were on the bed, and she said it just moves." SEB further disclosed that "[her father] use[s] . . . his hands, on her privacy." Green also testified that SEB said "[t]hat Dad would choke her," and she demonstrated this "[w]ith her hands on her neck."

Children's Protective Services (CPS) Specialist Melissa Greer testified that she was trained to conduct forensic interviews, and she conducted a forensic interview of SEB on February 2, 2021. According to Greer, SEB disclosed during the interview that "her father, [respondent], uses his finger, and pokes her in her vagina hole. She disclosed to [Greer] that her father wants her to have a baby, but she has to wait till she's older. She stated when she's older he's going to use his penis. When [Greer] asked [SEB] the last time this happened she stated it was five months ago, and it happened lots of times." Greer testified that the interview lasted for "about 20 minutes."

After listening to the testimonies of Greer and Green, the trial court held that SEB's statements about respondent's alleged sexual abuse would be admissible through Greer and Green. The court noted that SEB was five years old at the time of the disclosure, and that the language used during the disclosures was age appropriate. The court concluded that the statements had sufficient indicia of trustworthiness to be admissible under the requested court rule. After the hearing, the court issued a 2-page order reflecting its ruling, stating that it "finds that the statement of the child, [SEB], may be admitted into evidence through the testimony of the forensic interviewer as the interview was conducted in accordance with the state's forensic interview protocol and the circumstances surrounding the giving of the statement provided an indicia of trustworthiness."

The termination trial commenced on August 12, 2021. At the start of the trial, petitioner sought to have SEB's statements from the previous hearing—as recounted by Green and Greer—admitted, and the trial court allowed the statements into evidence. Eventually, the trial court found that statutory grounds MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*i*) and (*ix*) were proven by clear and convincing evidence. Specifically, the court found that, on the basis of SEB's statements, there was sufficient evidence to find by clear and convincing evidence that respondent sexually assaulted SEB "by making her rub on his penis, by touching her vagina with his finger and penis, and by allowing the child to observe him rubbing his penis until it 'pukes.' " The court also found that respondent had unaddressed mental health issues.

The trial court then took additional evidence on best interests, and after listening to the evidence and the parties' arguments, the trial court found that termination was in the children's best interests. The court began by reiterating that it credited SEB's statements that respondent sexually abused her by touching "her vagina . . . with his finger and penis," and that he had SEB "rub lotion on [his] penis." The court also credited SEB's statement that SEB saw respondent ejaculate, which SEB described as respondent's "penis . . . spit[ting] up something white." The court then addressed the best interests of each child individually. For SEB, the trial court reasoned that it was in her best interests to terminate respondent's parental rights because respondent had sexually assaulted her. For MNB, the court believed that termination was in her best interests as

well because her safety could not be reasonably assured in light of respondent's sexually assaulting SEB. Relying on the doctrine of anticipatory neglect, the court reasoned that how respondent treated SEB was probative for how he would treat MNB, and the court believed that it was not in MNB's best interests to be exposed to the potential of sexual abuse. The court acknowledged that there was evidence that respondent and SEB had a strong bond, but determined that this did not outweigh the fact that respondent sexually assaulted SEB, noting that it was difficult to reconcile how "you [can] say you love your child, but then sexually assault them."

Following trial, the court entered an order terminating respondent's parental rights. This appeal followed.

## II. STATUTORY GROUNDS

On appeal, respondent first argues that the trial court clearly erred when it found that a statutory ground had been proven by clear and convincing evidence. We disagree.

"We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). A finding is clearly erroneous if the reviewing court is left with the firm and definite conviction that a mistake was made. *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

The trial court found that termination was proper under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*ii*) and (*ix*), based largely on its finding that respondent sexually abused SEB. MCL 712A.19b(3)(k)(*ix*) provides that a trial court may terminate a parent's parental rights if it finds, by clear and convincing evidence, that

> (k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:
>
> * * *
>
> (*ix*) Sexual abuse as that term is defined in section 2 of the child protection law, 1975 PA 238, MCL 722.622.

MCL 722.622(z), in turn, provides, " 'Sexual abuse' means engaging in sexual contact or sexual penetration as those terms are defined in section 520a of the Michigan penal code, 1931 PA 328, MCL 750.520a, with a child." MCL 750.520a(q) and (r) define "sexual contact" and "sexual penetration" as follows:

> (q) "Sexual contact" includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:
>
> (*i*) Revenge.

(*ii*) To inflict humiliation.

(*iii*) Out of anger.

(r) "Sexual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required.

On appeal, respondent does not contest that SEB's statements, as submitted through the testimonies of Greer and Green, were properly admitted at the termination trial. Green testified that, during a forensic interview, SEB told Green that respondent's penis touched SEB's "privacy," which is how SEB referred to her vagina; that respondent put his penis on SEB's "privacy" and "it just moves"; that respondent used his hands "on [SEB's] privacy"; that respondent had SEB rub lotion on his penis; and that respondent put lotion on his penis and rubbed it up and down until white "spit" or "puke [came] out." Green also testified that SEB told her that respondent choked her, and demonstrated this with her hands around her neck. Greer testified that SEB told her during a different forensic interview that respondent used his fingers to "poke[] her in her vagina hole," and that respondent told SEB that he wants SEB to have a baby when she's older and "he's going to use his penis." SEB told Greer that this last happened about 5 months ago, but that "it happened lots of times."

Crediting these statements as the trial court did, they support that termination of respondent's rights to SEB and MNB was proper under MCL 712A.19b(3)(k)(*ix*) because the testimony supports that respondent engaged in "sexual contact" with SEB.[2] SEB said that respondent touched her vagina with his finger and penis, and that he had SEB touch his penis. This supports finding that respondent both intentionally touched SEB's "intimate parts" and intentionally had SEB touch his "intimate parts." See MCL 750.520a(q) ("Sexual contact" includes the intentional touching of the victim's or actor's intimate parts . . . ."). It can be reasonably construed that these acts were done for a sexual purpose or for the purpose of sexual arousal or gratification, as demonstrated by, if nothing else, the evidence that SEB witnessed respondent ejaculate. See MCL 750.520a(q) (defining "sexual contact" as the intentional touching of the victim's intimate parts or the actor's intimate parts "if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification [or] done for a sexual purpose"). Accordingly, the evidence supports finding by clear and convincing evidence that respondent engaged in "sexual contact" with SEB as that term is defined in MCL 750.520a(q), and thus that respondent engaged in "sexual abuse" with a child as that term is defined in MCL 722.622(z). This in turn supports that respondent's parental rights to SEB and MNB (as SEB's sibling) were properly terminated under MCL 712A.19b(3)(k)(*ix*).

The remaining requirement to terminate parental rights under MCL 712A.19b(3)(k)(*ix*) is that the trial court find by clear and convincing evidence that "there is a reasonable likelihood that

---

[2] The trial court did not make a finding as to whether respondent penetrated SEB, stating, "I don't know that I can say he penetrated her because I don't know that she could say he did."

-4-

the child will be harmed if returned to the care of the parent." The trial court concluded that there was a reasonable likelihood that both children would be harmed if returned to respondent's care in light of his sexual abuse of SEB. This finding was not clearly erroneous. See *In re VanDalen*, 293 Mich App 120, 140-141; 809 NW2d 412 (2011) (holding that the trial court did not clearly err by finding that there was a reasonable likelihood of harm if the children were returned to the respondent's care in light of evidence that the children were subjected to "brutal abuse" while in the respondents' care).

Accordingly, the trial court did not clearly err when it found by clear and convincing evidence that termination of respondent's parental rights to SEB and MNB was proper under MCL 712A.19b(3)(k)(*ix*) because he sexually abused SEB.[3]

On appeal, respondent's argument that termination was improper under MCL 712A.19b(3)(k)(*ix*) boils down to attacks on SEB's credibility. He argues that her statements should not be believed because (1) there was no physical evidence that he abused her despite her being physically examined after her disclosures, (2) she was forensically interviewed before this case began and did not disclose any abuse, (3) he had previously been subjected to CPS investigations where it was alleged that he sexually abused children but those allegations were never substantiated, and (4) his former girlfriend lived with SEB and him for months and she testified that she never observed anything resembling abuse. Credibility determinations, however, are generally reserved for the trial court. See *In re Fried*, 266 Mich App at 541. While respondent's arguments may be reasons for a factfinder to disbelieve SEB, this Court sits as an error-correcting Court, see *Michigan Up & Out of Poverty Now Coal v State*, 210 Mich App 162, 168; 533 NW2d 339 (1995) (explaining that "this Court functions as a court of review that is

---

[3] The above discussion also supports that the trial court did not clearly err when it found that termination was proper under MCL 712A.19b(3)(b)(*i*) and (k)(*ii*), which provide that termination of parental rights is proper if the trial court finds, by clear and convincing evidence, that

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

* * *

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

* * *

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

principally charged with the duty of correcting errors"), and none of respondent's arguments warrant a conclusion that the trial court erred by crediting SEB's statements.[4]

Respondent also contests the trial court's finding of other statutory grounds for termination, but "[h]aving concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision." *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

### III. BEST INTERESTS

Respondent next argues that trial court clearly erred when it found by a preponderance of the evidence that termination was in the children's best interests. We disagree.

Whether termination of parental rights is in the child's best interests must be proven by a preponderance of the evidence. *In re Moss,* 301 Mich App at 90. This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones,* 286 Mich App 126, 129; 777 NW2d 728 (2009).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Factors that may be considered when determining whether termination of parental rights is in a child's best interests include the child's bond to the parent, the child's need for permanency, stability and finality, and the children's well-being while in the parent's care. *Id*. at 713-714. In *In re Olive/Metts Minors*, 297 Mich App 35, 43-44; 823 NW2d 144 (2012), this Court held that, when termination proceedings concern two or more children and the individual interests of the children significantly differ—such as when the children are in separate placements—courts should consider the best interests of the children individually. See also *In re White*, 303 Mich App at 715-716 (reaffirming and clarifying the holding from *In re Olive/Metts*).

---

[4] As part of his statutory-grounds argument, respondent notes in passing that he intended to call his father as a witness but was unable to do so. There are at least a couple of problems with this argument, the most relevant being that respondent sought to call his father as part of the best-interests portion of the proceedings, and so his testimony would not have been considered by the trial court when it made its statutory-grounds ruling. Secondarily, respondent misstates the record when he represents that his father "was excluded under the sequestration order, because he was seen on the Zoom screen during the trial." In reality, respondent's father was not included on the sequestration order because, when the trial court asked respondent which witnesses he intended to call before the court sequestered those witnesses, respondent did not list his father. Then, while not subject to the sequestration order, respondent's father wandered into the room from which respondent was remotely participating in the hearing, and he was seen in the background of respondent's screen. Ultimately, the trial court did not allow respondent's father to testify because the court could not determine how much testimony respondent's father heard and he was not properly sequestered.

When these proceedings began, SEB resided with respondent and MNB resided with Woodby. For this reason, their best interests needed to be addressed separately, which the trial court did.

Addressing SEB, the trial court reasoned that termination was in her best interests because respondent sexually abused her. The trial court recognized the evidence that respondent had a strong bond with SEB, but it concluded that termination of respondent's parental rights was still in SEB's best interests to protect her from further sexual abuse.

This conclusion was not clearly erroneous. In light of respondent's sexually abusing SEB, her safety and well-being could not be reasonably assured in respondent's care, which supports termination. See *In re VanDalen*, 293 Mich App at 142 (holding that the trial court did not clearly err by finding that termination was in the children's best interests because their "safety and well-being could not reasonably be assured"). Further, we agree with the trial court that, despite any bond between SEB and respondent, it was in SEB's best interests to terminate respondent's parental rights in order to protect her from the possibility of further sexual abuse. In other words, the trial court did not clearly err when it concluded that ensuring SEB's safety and well-being outweighed preserving her bond with respondent, which supports the court's conclusion that termination was in SEB's best interests.

Turning to MNB, the trial court reasoned that termination of respondent's parental rights was in MNB's best interests based largely on the doctrine of anticipatory neglect, which recognizes that how a parent treats one child is probative of how that parent may treat other children. *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001). On the basis of this doctrine, the court reasoned that respondent's sexually abusing SEB was probative of how he would treat MNB, and that it was not in MNB's best interests to be exposed to the potential of sexual abuse. Therefore, according to the trial court, termination of respondent's parent rights was in MNB's best interests.

The trial court properly applied the doctrine of anticipatory neglect to conclude that it was in MNB's best interests to terminate respondent's parental rights. Under the doctrine of anticipatory neglect, the more similar the children are, the more probative the parent's treatment of one child is for how that parent will treat the other child. Conversely, the more dissimilar the children are, "such as [in] age and medical condition," the less probative the parent's treatment of one child is for how that parent will treat the other child. *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). Here, the only pertinent difference between the children is that MNB was a few years younger than SEB. This age difference was negligible, however. Moreover, how respondent treated the older SEB is highly probative of how respondent will treat MNB as she gets older. Thus, based on respondent's sexually assaulting SEB, there was potential for MNB to be subject to sexual abuse in the future if respondent retained his parental rights. Accordingly, the trial court did not clearly err when it found that termination of respondent's parental rights was in

MNB's best interests because MNB's safety and well-being could not be reasonably ensured in respondent's care.[5]

On appeal, respondent argues that it was not in the children's best interest to terminate his parental rights because he had a strong bond with the children, but the evidence at trial only evinced that he had a strong bond with SEB, and the trial court explicitly recognized that bond. Moreover, regardless of the bond that respondent had with the children, it was not clear error for the trial court to find that protecting the children from sexual abuse outweighed preserving that parent-child bond.

Respondent also argues that, based on the testimony of Dr. Bruce Howard, the trial court should have concluded that termination was not in the children's best interests. Dr. Howard testified that he did not originally recommend termination of respondent's parental rights and instead suggested that services be provided. Later, however, Dr. Howard was asked how his opinion would change if the court concluded as a factual matter that respondent had sexually abused a child, and he said that, in that case, he would recommend termination. Thus, the testimony of Dr. Howard does not support that preserving respondent's parental rights was in the children's best interests.

Respondent further argues that termination was not in the children's best interests because there was evidence that respondent was capable of properly parenting and financially providing for the children. The best-interests analysis, however, does not merely focus on a parent's ability to parent and provide for the children; it weighs *all* the evidence to determine the children's best interests. See *In re White*, 303 Mich App at 713. With this understanding, even considering respondent's capacity to properly parent and provide for the children, the trial court did not clearly err when it found that terminating respondent's parental rights was in the children's best interests to ensure their safety and well-being, and to protect them from the possibility of further sexual abuse at the hands of respondent.

In sum, the trial court's overarching concern was the children's safety and well-being, and it believed that, in light of respondent's sexually assaulting SEB, neither child's safety or well-being could be reasonably ensured if left in respondent's care. For the reasons discussed, we conclude that this finding was not clearly erroneous.

Affirmed.

/s/ Thomas C. Cameron
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle

---

[5] While not necessarily relevant to the issues raised on appeal, the trial court also properly noted that SEB and MNB's placement with their biological mother did not weigh against termination because a biological parent is not a relative. See *In re Schadler*, 315 Mich App 406, 413; 890 NW2d 676 (2016).