BURNS v CITY OF DETROIT (ON REMAND)

Docket No. 213029. Submitted January 22, 2002, at Detroit. Decided
November 1, 2002, at 9:05 A.M.

Lynette Burns brought an action in the Wayne Circuit Court against
the city of Detroit and others, alleging that two of her co-workers
at the Detroit Police Department sexually harassed her at work and
that her supervisors did not take appropriate remedial actions after
she reported the harassment. A jury found in favor of the plaintiff
on her claims alleging sexual harassment, retaliation, defamation,
and tortious interference with a business relationship. The court,
Paul S. Teranes, J., entered a judgment and order consistent with
the verdict. The Court of Appeals affirmed the verdict with regard
to the sexual harassment and retaliation claims, reversed with
regard to the remaining claims, and remanded for a new trial with
regard to damages. *Burns v Detroit*, unpublished opinion per
curiam of the Court of Appeals, issued October 31, 2000 (Docket
No. 213029). The Supreme Court, in lieu of granting leave to
appeal, remanded the matter to the Court of Appeals to consider
whether the remarks that formed the basis for the sexual harass-
ment verdict constitute protected speech under the United States
and Michigan Constitutions and whether the liability imposed
raises concerns regarding vagueness and overbreadth. 465 Mich 946
(2002).

On remand, the Court of Appeals *held*:

1. This case presents no exigent circumstances that require the
Court of Appeals to review the constitutional issue raised by the
Supreme Court because of the blatant and highly offensive harass-
ment to which the plaintiff was subjected and because Michigan's
sexual harassment law is well defined and unambiguous. No party
raised the constitutional issue below or on appeal. No errors with
regard to the trial court's rulings or the jury's findings concerning
sexual harassment occurred below.

2. The comments at issue do not constitute protected speech
under the United States and Michigan Constitutions and the imposi-
tion of liability for the comments does not raise valid concerns of
vagueness and overbreadth.

3. The plaintiff presented evidence to satisfy the five necessary elements for establishing a prima facie case of sexual harassment based on a hostile work environment stated in *Radtke v Everett*, 442 Mich 368 (1993).

4. The language at issue does not reach the level of constitutionally protected speech. The language was not an essential part of any exposition of ideas and was more akin to "fighting" words. The language and personal abuse directed toward the plaintiff were not in any proper sense communication of information or opinion safeguarded by the constitution. While the defendants are free to express their views in the workplace, the constitution does not shield them from liability for verbally attacking a co-worker by use of ad hominem, sexually explicit vulgarities.

5. The proscription of sexually harassing words by way of sexual discrimination laws is permissible because the laws are essentially directed against conduct.

6. Vagueness challenges that do not implicate First Amendment freedoms are examined in light of the facts of each particular case. A defendant has standing to raise a vagueness challenge to a statute only if the statute is vague as applied to the defendant's conduct. Here, the relevant provisions of the Civil Rights Act are not vague with regard to providing fair notice of the conduct proscribed and does not confer on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed.

7. The provisions of the Civil Rights Act relating to sexual harassment of the hostile work environment type do not unconstitutionally chill a person's rights to free speech. The act does not have the realistic potential to chill constitutionally protected speech. The verdict regarding the sexual harassment claim must be affirmed.

Affirmed.

*Sachs Waldman* (by *Mary Katherine Norton* and *Elizabeth A. Cabot*) for the plaintiff.

City of Detroit Law Department (by *June Boyd*, Assistant Corporation Counsel) for the defendants.

Amici Curiae:

*Eisenberg & Bogas, P.C.* (by *Kathleen L. Bogas*), for the Michigan Trial Lawyers Association, the

Detroit Trial Lawyers Association, and the Michigan Employment Lawyers Association.

*Amberg, Firestone and Lee, P.C.* (by *Joseph H. Firestone*), for the Michigan Education Association.

*Sachs Waldman Professional Corporation* (by *Mary Ellen Gurewitz* and *Marshall J. Widick*) for the Michigan State A.F.L.-C.I.O.

*Dan Sherrick*, General Counsel, and *Georgi-Ann Bargamian*, Associate General Counsel, for International Union, UAW.

*Nicholas M. Inzeo*, Acting Deputy General Counsel, *Philip B. Sklover*, Associate General Counsel, *Vincent J. Blackwood*, Assistant General Counsel, *Julie L. Gantz*, Attorney, and *Adele Rapport*, Regional Attorney, for the United States Equal Employment Opportunity Commission.

*Eardley Law Offices PC* (by *Eugenie B. Eardley* and *John F. Eardley*) for the Triangle Foundation.

*Peter Henner* and *Paula Brantner* for the National Employment Lawyers Association.

*William Goodman, James Reif,* and *Shayana Kadidal* for the Center for Constitutional Rights.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Ron D. Robinson*, Assistant Attorney General, for the Michigan Department of Civil Rights.

*Kingsley R. Browne* for the Center for Individual Freedom.

ON REMAND

Before: METER, P.J., and GRIFFIN and SAAD, JJ.

METER, P.J. This opinion addresses whether certain comments that formed the basis for a jury verdict of workplace sexual harassment constitute protected speech under the United States and Michigan Constitutions and whether the imposition of liability for the comments under the Civil Rights Act, MCL 37.2101 *et seq.*, raises concerns of vagueness and overbreadth. We conclude that the comments at issue do not constitute protected speech and that the imposition of liability does not raise concerns of vagueness and overbreadth. We therefore uphold the finding of sexual harassment.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff, who was a fingerprint technician for the Detroit Police Department, claimed that two male co-workers on the midnight shift, defendants Terrence Hill and Darryl Hopson,[1] sexually harassed her and that her supervisors did not take appropriate remedial actions after she reported the harassment. Plaintiff sued for sexual harassment, retaliation, defamation, and tortious interference with a business relationship, and the jury found for plaintiff on all four claims. Defendants appealed as of right to this Court from

---

[1] We note that the names of the individual defendants have been spelled various ways in the briefs, transcripts, and lower court documents. This opinion employs the spelling used in the caption of the original unpublished opinion issued in this case. See *Burns v Detroit*, unpublished opinion per curiam of the Court of Appeals, issued October 31, 2000 (Docket No. 213029).

the judgment. We[2] upheld the jury's verdict with regard to sexual harassment and retaliation, reversed the verdict with regard to the two remaining claims, and remanded the matter for a new trial regarding damages. Subsequently, defendants sought leave to appeal to the Supreme Court, which, in lieu of granting leave to appeal, remanded the case to this Court and asked us to consider whether the remarks that formed the basis for the sexual harassment verdict constitute protected speech under the United States and Michigan Constitutions and whether the liability imposed raises concerns of vagueness and overbreadth. 465 Mich 946 (2002).

Hill and Hopson made the following comments, among others, while plaintiff performed her job:[3]

"[D]on't lie on me bitch."

"[She's a] fucking [b]itch . . . ."

"[B]itch bring [your] ass back . . . ."

"[Your] problem [is you] don't have a man. You don't have a man that fucks your ass every night. One good time you would be all right. That's why me and Darryl hated working around a bunch of bitches."

"[T]hese fucking females up in here will drive you out of your goddamn mind. That's what you can't let them do."

"You got to understand that these females in Ident[4] are unhappy women who don't have men in their lives. For a woman who don't have a man to be friends with another

---

[2] The original panel consisted of Presiding Judge METER and Judges GRIBBS and GRIFFIN.

[3] We note that we have deviated from this Court's usual practice of editing obscenities in opinions because the specific subject matter of the instant remand is the abusive remarks themselves and whether they constitute protected speech. Accordingly, viewing the remarks in their entirety, although unpleasant, is critical to an understanding of this case.

[4] This abbreviation refers to the Identification Bureau of the Detroit Police Department.

woman who don't have a man and getting advice from each other don't make any sense[.] What kind of shit is that? These women don't have nothing else in their lives."

"[I]f she had a man she wouldn't care if she is called a bitch or not. Man, if somebody messed with my job knowing I got a wife and two kids, I'll stump them. I'll follow her ass out to her car and stump the shit out of the bitch."

"[I]f you catch her ass out there . . . and stump the living shit out of her fucking ass . . . [n]obody will see you and I'll drive pas[t] like I didn't see anything. If you don't wanna do it I got some partners from my old neighborhood who could do it for you."

"[She's a] male hating female."

Hill and Hopson also said that plaintiff was abnormal for being over thirty years old and without a man. Moreover, plaintiff testified that she had received irritating, romantic notes from Hopson throughout her years at her job and that Hill sometimes blew in her ear and asked her why she covered her body.

After plaintiff reported these comments and threats, a meeting took place to discuss various workplace issues. At this meeting, defendant Dereck Hicks, one of the fingerprint technician supervisors, stated that women are apt to "cry sexual harassment" because of premenstrual syndrome. Hicks also warned that "[a]nything a man says to a woman he can end up in court." Defendants admitted that as a result of plaintiff's sexual harassment claim, they transferred her to the day shift. Plaintiff testified that this transfer caused her hardship with child care and a pay reduction.

## II. NATURE OF THE CASE

Our Supreme Court raised the constitutional issue on remand sua sponte and asked us to address

whether the statements in question constitute protected speech and whether the liability imposed raises concerns of vagueness and overbreadth. The Court framed the issue as

> whether the remarks that supported the "hostile environment" sexual harassment claims cannot form the basis for liability because they are protected speech under US Const, Am I, and Const 1963, art 1, § 5, and because basing a finding of liability on such remarks would raise vagueness and overbreadth concerns under the same constitutional provisions.[5]

### III. LEGAL DISCUSSION

#### A. FORFEITURE OF THE ISSUE

We decline to reverse our decision in favor of plaintiff for two reasons. First, no defendant should get the benefit of this review because no defendant raised the issue of a possible constitutional violation below.[6] As noted in *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993), "Issues raised for the first time on appeal are not ordinarily subject to review." The *Booth* Court further stated:

> This Court has repeatedly declined to consider arguments not presented at a lower level, including those relating to

---

[5] We note that Justices WEAVER, CAVANAGH, and KELLY dissented from this order of remand, noting that verbal conduct constituting sexual discrimination is specifically actionable under Michigan law.

[6] It is not surprising that this issue was not raised below or on appeal, given the lack of case law supporting the existence of a free speech violation in circumstances analogous to those present here. Indeed, one of defendants' attorneys conceded during oral arguments on remand that she could not locate a single case in support of her position.

constitutional claims. *In re Forfeiture of Certain Personal Property*, 441 Mich 77, 84; 490 NW2d 322 (1992); *Butcher v Treasury Dep't*, 425 Mich 262, 276; 389 NW2d 412 (1986); *Dagenhardt v Special Machine & Engineering, Inc*, 418 Mich 520; 345 NW2d 164 (1984); *Ohio Dep't of Taxation v Kleitch Bros, Inc*, 357 Mich 504, 516; 98 NW2d 636 (1959). We have only deviated from that rule in the face of exceptional circumstances. *Perin v Peuler*, 373 Mich 531, 534; 130 NW2d 4 (1964)[, overruled on other grounds in *McDougall v Schanz*, 461 Mich 15; 597 NW2d 148 (1999)] (issue resolution was necessary to quell confusion generated by the Court's earlier opinions); *People v Snow*, 386 Mich 586, 591; 194 NW2d 314 (1972) (addressed the issue to prevent a miscarriage of justice). There exist no exigent circumstances in this case that require our review of the board's constitutional argument. [*Booth, supra* at 234, n 23.]

See also *People v Viano*, 467 Mich 856 (2002). Moreover, the Michigan Court of Appeals "functions as a court of review that is principally charged with the duty of correcting errors" that occurred below and thus should decline to address unpreserved issues. See *Michigan Up & Out of Poverty Now Coalition v Michigan*, 210 Mich App 162, 167-168; 533 NW2d 339 (1995).

Because of the blatant and highly offensive harassment to which plaintiff was subjected, and because Michigan's sexual harassment law is well defined and unambiguous, we see no exigent circumstances, particularly in this case, that require our review of the constitutional issue raised by the Supreme Court. *Booth, supra* at 234, n 23. In fact, this case presents a much stronger case than *Booth* for declining to address the constitutional issue, because in *Booth*, a party had at least raised the issue on appeal. *Id.* Here, no party raised the constitutional issue either below *or* on appeal. Moreover, no errors with regard to the

trial court's rulings or the jury's findings concerning sexual harassment occurred below in this case, and therefore there is nothing for us to correct. *Up & Out of Poverty, supra* at 167-168. While we respect our Supreme Court's authority to raise the issue on remand sua sponte, we believe that invoking this constitutional issue to benefit a party who failed to raise the issue would be entirely inappropriate.

## B. CONSTITUTIONAL QUESTIONS

Second, and more importantly, we find that the comments at issue here do not constitute protected speech under the United States and Michigan Constitutions and that the imposition of liability for the comments does not raise valid concerns of vagueness and overbreadth. We note that our review of constitutional questions such as these is de novo. See *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 582; 640 NW2d 321 (2001).

### i. FREE SPEECH ANALYSIS

Sexual harassment claims of the hostile work environment type are based on certain provisions of the Civil Rights Act. *Radtke v Everett*, 442 Mich 368, 382-383; 501 NW2d 155 (1993). Specifically, MCL 37.2202(1)(a) states that an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202(1)(c) states that an employer shall not "[s]egregate, classify, or otherwise

discriminate against a person on the basis of sex with respect to a term, condition, or privilege of employment, including, but not limited to, a benefit plan or system." MCL 37.2102(1) states that "[t]he opportunity to obtain employment . . . without discrimination because of . . . sex . . . as prohibited by this act, is recognized and declared to be a civil right." Finally, MCL 37.2103(i) states:

> Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other *verbal* or physical conduct or communication of a sexual nature under the following conditions:
>
> (*i*) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.
>
> (*ii*) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.
>
> (*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment. [Emphasis added.]

In *Radtke, supra* at 382-383, our Supreme Court relied on the provisions of the Civil Rights Act to fashion five necessary elements for establishing a prima facie case of sexual harassment based on a hostile work environment. These elements are:

> (1) the employee belonged to a protected group;

(2) the employee was subjected to communication or conduct on the basis of sex;

(3) the employee was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5) respondeat superior. [*Id.*]

As noted in our prior opinion, plaintiff satisfied these elements. Because the prior opinion was not published, we restate it here in relevant part:

Defendants' arguments are directed toward elements 2, 3, 4, and 5.

To establish elements 2 and 3, plaintiff had to show she was subject to unwanted sexual communication because of her gender. *Id.* at 383. Defendants contend that the comments allegedly directed toward plaintiff by defendants Terr[e]nce Hill and Darryl Hopson had nothing to do with sex or with her gender as a female but were simply the result of a disagreement among coworkers. However, Hill and Hopson's comments, as testified to by plaintiff and her coworker Elaine Davis, *were* of a sexual nature and *did* occur, at least in part, as a result of plaintiff's gender.[7] Particularly, Hill and Hopson referred to plaintiff as a "b—h"

---

[7] Defendants argue that by making this statement in our prior opinion, we acknowledged that not all the statements were based on plaintiff's gender. Defendants contend that because some of the statements were not based on gender, the entire liability finding must be vacated under *NAACP v Claiborne Hardware Co*, 458 US 886; 102 S Ct 3409; 73 L Ed 2d 1215 (1982). Defendant's contention is without merit. In *NAACP*, the Court vacated an award of damages because it could not be determined which of the damages had wrongly been attributed to nonviolent, constitutionally protected activity. *Id.* at 922-924. Here, the remarks viewed in their entirety damaged plaintiff and the remarks viewed in their entirety had a gender-based origin. Our statement in our prior opinion that the comments occurred "at least in part[] as a result of plaintiff's gender" indicated merely that the comments may have been based to a certain extent on personal animosity towards plaintiff *as well as* on plaintiff's gender.

and a "f———g female" and indicated that plaintiff needed to "get her a— f—d by a man every night." They further indicated that plaintiff was abnormal for being over thirty years old and without a man. Thereafter, at a meeting held to discuss various issues about the workplace, one of the fingerprint technician supervisors, defendant Dereck Hicks, indicated in plaintiff's presence that women will "cry sexual harassment" because of premenstrual syndrome. This evidence showed that plaintiff was indeed subjected to abuse of a sexual nature because of her gender as a female. While some witnesses denied that Hill, Hopson, and Hicks made the comments at issue, the evidence was nearly balanced such that the sexual harassment verdict was not against the great weight of the evidence.

The evidence also supported the jury's finding with regard to element 4. As stated in *Radtke, supra* at 394-395, even a single incident of sexual harassment, if extreme, will support a hostile work environment sexual harassment claim. Here, there was more than a single incident. In addition to the initial harassing conduct that occurred on November 14th and 15th, 1994, plaintiff testified that she had received numerous, irritating, romantic notes from Hopson over the years and that Hill sometimes blew in her ear and asked why she covered her body. Keeping in mind that plaintiff worked within a small group of individuals and could not avoid seeing either Hill or Hopson if she continued working on the midnight shift, we conclude that a reasonable person, in the totality of the circumstances, would have felt extremely disrupted by the comments and actions directed at plaintiff. See *Radtke, supra* at 394 (indicating that whether a hostile work environment existed is determined by the "reasonable person" standard). The jury's finding regarding element 4 was not against the great weight of the evidence.

Nor was the jury's finding regarding element 5 against the great weight of the evidence. As stated in *Radtke, supra* at 396, to establish respondeat superior a plaintiff must show that her employer, after receiving notice of alleged sexual harassment, failed to adequately investigate the claim and take prompt and appropriate remedial action. Here, plaintiff

and others testified that plaintiff told one of her supervisors, Nola Hitchens, that she had been sexually harassed and that in response, the city (1) counseled Hill for using vulgar language, (2) entered a demerit on Hill and Hopson's annual evaluations for an "altercation with a coworker;" (3) reissued a sexual harassment policy; and (4) held a meeting at which claims of sexual harassment were belittled. The jury, based on this evidence, could reasonably have concluded that the city's efforts failed to adequately address plaintiff's claim. Indeed, there was no evidence that anyone spoke to Hill or Hopson about their use of *sexually* abusive language, they received no suspension for it, the meeting purporting to address it only furthered the harassment, and *plaintiff*, instead of Hill and Hopson, was subsequently removed from the midnight shift. The jury's verdict with respect to plaintiff's sexual harassment claim was not against the great weight of the evidence. [*Burns v Detroit*, unpublished opinion per curiam of the Court of Appeals, issued October 31, 2000 (Docket No. 213029) (emphasis in original).]

Despite plaintiff's clear establishment of a sexual harassment case under applicable Michigan law, the Supreme Court asks us to determine whether the comments at issue cannot support a finding of liability because they constitute protected speech under Const 1963, art 1, § 5, and US Const, Am I.

The Michigan Constitution states that "[e]very person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press." Const 1963, art 1, § 5. The First Amendment of the United States Constitution similarly states that "Congress shall make no law . . . abridging the freedom of speech . . . ." US Const, Am I. The rights to free speech under the Michigan and federal constitutions

are coterminous. *Up & Out of Poverty, supra* at 168. Thus, federal authority construing the First Amendment may be used in construing the Michigan Constitution's free speech guarantee. See *id.* at 168-169.

In *Chaplinsky v New Hampshire,* 315 US 568, 571; 62 S Ct 766; 86 L Ed 1031 (1942), the United States Supreme Court noted that "the right of free speech is not absolute at all times and under all circumstances." The Court stated:

> There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.[8] It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument." *Cantwell v Connecticut,* 310 US 296, 309-310; 60 S Ct 900, 906; 84 L Ed 1213 [(1940)]. [*Chaplinsky, supra* at 571-572.]

Clearly, the comments at issue here were "no essential part of any exposition of ideas . . . ." *Id.* at

---

[8] We note that this definition of "fighting" words has been somewhat modified. See *UWM Post, Inc v Univ of Wisconsin System Bd of Regents,* 774 F Supp 1163, 1170 (ED Wis, 1991). It now includes only the second half of the definition—words that tend to incite an immediate breach of the peace—and it is now restricted to words "directed at the person of the hearer" and words that "naturally tend to provoke violent resentment." *Id.*

572. Indeed, the comments were more akin to "fighting" words and essentially constituted a vulgar, vituperative, ad hominem attack against an individual. Hill and Hopson continually referred to plaintiff as a "bitch," called her a "fucking female," ridiculed her lack of a man, and, importantly, threatened her with personal harm. These "epithets" and this "personal abuse," *directed toward a particular individual*, were not "in any proper sense communication of information or opinion safeguarded by the Constitution." *Id.*; *Cantwell, supra* at 310. Accordingly, the language at issue simply does not reach the level of constitutionally protected speech under the doctrine from *Chaplinsky*, and the sexual harassment judgment did not violate Const 1963, art 1, § 5, or US Const, Am I. While defendants are free to express their views in the workplace, the constitution does not shield them from liability for verbally attacking a co-worker by use of ad hominem, sexually explicit vulgarities.

Second, the United States Supreme Court has noted, albeit in dicta, that the proscription of sexually harassing words by way of sexual discrimination laws is permissible, because the laws are essentially directed against conduct. See *RAV v St Paul, Minnesota*, 505 US 377, 389; 112 S Ct 2538; 120 L Ed 2d 305 (1992). Writing for the Court, Justice Scalia stated:

> Another valid basis for according differential treatment to even a content-defined subclass of proscribable speech is that the subclass happens to be associated with particular "secondary effects" of the speech, so that the regulation is " *justified* without reference to the content of the . . . speech,' " *Renton v Playtime Theatres, Inc*, 475 US 41, 48; 106 S Ct 925; 89 L Ed 2d 29 (1986), (quoting, with emphasis, *Virginia State Bd of Pharmacy* [*v Virginia Citizens Con-*

*sumer Council, Inc,* 425 US 748, 771; 96 S Ct 1817; 48 L Ed
2d 346 (1976)]). . . . A State could, for example, permit all
obscene live performances except those involving minors.
Moreover, since words can in some circumstances violate
laws directed not against speech but against conduct (a law
against treason, for example, is violated by telling the
enemy the Nation's defense secrets), *a particular content-
based subcategory of a proscribable class of speech can be
swept up incidentally within the reach of a statute
directed at conduct rather than speech. . . . Thus, for
example, sexually derogatory "fighting words," among
other words, may produce a violation of Title VII's general
prohibition against sexual discrimination in employment
practices.* . . . Where the government does not target con-
duct on the basis of its expressive content, acts are not
shielded from regulation merely because they express a dis-
criminatory idea or philosophy. [*RAV, supra* at 389-390
(emphasis added).]

The Michigan Civil Rights Act, like Title VII, prohibits
sexual discrimination in employment practices. It
targets, among other things, the creation of an "intim-
idating, hostile, or offensive employment . . . environ-
ment." See MCL 37.2103(i)(*iii*). The act is essentially
directed toward discriminatory conduct, and oral
remarks such as those at issue here are "swept up
incidentally within the reach of a statute directed at
conduct rather than speech." *RAV, supra* at 389.
Accordingly, the remarks are proscribable under the
rationale of *RAV.*

For these reasons, we hold that no violation of
Const 1963, art 1, § 5, or US Const, Am I, occurred in
this case.[9]

---

[9] Although not strictly necessary to our decision, we note that the
words at issue could potentially be considered as directed toward a cap-
tive audience. As noted in *Hill v Colorado,* 530 US 703, 716; 120 S Ct 2480;
147 L Ed 2d 597 (2000): "The right to free speech . . . may not be curtailed

simply because the speaker's message may be offensive to his audience. But the protection afforded to offensive messages does not always embrace offensive speech that is so intrusive that the *unwilling audience cannot avoid it.*" (Emphasis added.) In *Bonnell v Lorenzo*, 241 F3d 800, 820-821 (CA 6, 2001), the court further explained this concept:

> Plaintiff may have a constitutional right to use words such as "pussy," "cunt," and "fuck," but he does not have a constitutional right to use them in a classroom setting where they are not germane to the subject matter, in contravention of the College's sexual harassment policy. . . . This is particularly so when one considers the unique context in which the speech is conveyed—a classroom where a college professor is speaking to a captive audience of students . . . who cannot "effectively avoid further bombardment of their sensibilities simply by averting their [ears]." *Hill* [, *supra* at 716].

Here, plaintiff was at her place of employment, attempting to do her job, when Hill and Hopson used the term "bitch" and made derisive comments about her gender and her sex life. She could no more avoid the disturbing comments than could the students in *Bonnell*, and the comments most certainly were not germane to the subject matter of the workplace, i.e., fingerprinting. See *Bonnell*, *supra* at 820-821.

Moreover, as noted in *McLeod v Providence Christian Sch*, 160 Mich App 333, 345; 408 NW2d 146 (1987), "elimination of discrimination on the basis of sex is a compelling state interest." See also *Radtke*, *supra* at 387 ("the purpose of the [civil rights] act is to combat serious demeaning and degrading conduct based on sex in the workplace, and to allow women the opportunity to fairly compete in the marketplace"). Accordingly, there must be a balance between eliminating workplace discrimination and safeguarding free speech protections. In *Roberts v United States Jaycees*, 468 US 609, 615; 104 S Ct 3244; 82 L Ed 2d 462 (1984), the Court considered whether a prohibition on male-only Jaycees clubs violated "the male members' constitutional rights of free speech and association." The Court held that the compelling state interest in eliminating discrimination against females justified the minimal impact on the male Jaycees' free association rights. *Id.* at 628-629. It could potentially be argued that the prohibition against the vulgar and harassing language *used in the workplace* in the instant case serves to further the "compelling state interest" in eliminating workplace discrimination, see *McLeod*, *supra* at 345, while minimally affecting the free speech rights of the speakers. They are free to express their views; they are simply not free in the workplace to verbally attack a co-worker by use of ad hominem, sexually explicit vulgarities.

ii. VAGUENESS AND OVERBREADTH

The Supreme Court's remand order also directed us to consider whether "basing a finding of liability on such remarks would raise vagueness and overbreadth concerns under [Const 1963, art 1, § 5, and US Const, Am I]." As noted in *People v Howell*, 396 Mich 16, 20; 238 NW2d 148 (1976):

> A statute may be challenged for vagueness on three grounds:
>
> 1. It does not provide fair notice of the conduct proscribed.
>
> 2. It confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed.
>
> 3. Its coverage is overbroad and impinges on First Amendment freedoms.

See also *Woll v Attorney Gen*, 409 Mich 500, 533; 297 NW2d 578 (1980), clarified 409 Mich 551; 300 NW2d 171 (1980).

Moreover, "[v]agueness challenges that do not implicate First Amendment freedoms are examined in light of the facts of each particular case." *People v Lino*, 447 Mich 567, 575; 527 NW2d 434 (1994); *Howell, supra* at 21; see also *People v Rogers*, 249 Mich App 77, 95; 641 NW2d 595 (2001), and *People v Cavaiani*, 172 Mich App 706, 714; 432 NW2d 409 (1988) ("A defendant has standing to raise a vagueness challenge to a statute only if the statute is vague as applied to his conduct."). In light of our conclusion above that the specific facts of the instant case clearly and unequivocally supported a finding of sexual harassment, the relevant provisions of the Civil Rights Act were *not* vague, in terms of the first two

*Howell* grounds, as applied to defendants' conduct.[10]
See, generally, *Howell, supra* at 21, and *Cavaiani, supra* at 714.

With regard to the third ground—overbreadth—the
Court in *Woll, supra* at 534, stated:

> A successful overbreadth challenge thus permits a person
> charged with speech or conduct violative of a statute to
> escape punishment based on the First Amendment rights of
> others impinged upon by the statute although under a nar-
> rower, properly drawn statute, his speech or conduct could
> be punished because it is not so protected.

In other words, "[l]itigants . . . are permitted to chal-
lenged a statute not because their own rights of free
expression are violated, but because of a judicial pre-
diction or assumption that the statute's very existence
may cause others not before the court to refrain from
constitutionally protected speech or expression."
*Broadrick v Oklahoma,* 413 US 601, 612; 93 S Ct 2908;
37 L Ed 2d 830 (1973), superceded on other grounds
by statute as stated in *Bauers v Cornett,* 865 F2d 1517
(CA 8, 1989).

In *Plymouth Charter Twp v Hancock,* 236 Mich
App 197, 202; 600 NW2d 380 (1999), this Court stated
that "[w]hen considering whether an ordinance is
overbroad, a court should consider the realistic
potential of the ordinance to chill constitutionally
protected speech." For a proper finding of unconstitu-
tionality, "the overbreadth of a statute must not only
be real, but substantial as well, judged in relation to

---

[10] Moreover, we note that unlike the statute involved in *People v
Boomer,* 250 Mich App 534, 539-540; 655 NW2d 255 (2002), the statute at
issue here gives fair notice of the prohibited conduct, and the "reasonable
person" standard, discussed *infra,* serves to prevent the abuse of enforce-
ment discretion.

the statute's plainly legitimate sweep." *Broadrick*, *supra* at 615. We conclude that the hostile-work-environment sexual harassment provisions of the Civil Rights Act do not unconstitutionally chill a person's rights to free speech. Indeed, the statute, as construed by the Michigan Supreme Court, prohibits *unwelcome* sexual conduct or communication that "was intended to or in fact did *substantially interfere* with the employee's employment or created an *intimidating, hostile,* or *offensive* work environment." *Radtke, supra* at 382 (emphasis added). Moreover, "whether a hostile work environment existed shall be determined by whether a *reasonable* person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Id.* at 394 (emphasis added).

As noted in *Plymouth Twp, supra* at 203, the use of a "reasonable person" standard limits the scope of a law and helps to avoid the danger of substantial overbreadth. We conclude that "a reasonable person would understand" that the Civil Rights Act does not prohibit constitutionally protected speech, such as the expression in general of unpopular ideas, but instead prohibits communication of a sexual nature, like that at issue here, that substantially interferes with a person's work or creates an intimidating, hostile, or offensive work environment. See, generally, *id.* In our opinion, the difference between these two types of speech is readily ascertainable.

Furthermore, we note that statutes are presumed to be constitutional. *Caterpillar, Inc v Dep't of Trea-*

*sury*, 440 Mich 400, 413; 488 NW2d 182 (1992). Courts must construe a statute as constitutional unless its unconstitutionality is clearly apparent. *Id.* "The party challenging the constitutionality of a statute bears the burden of proving its invalidity." *People v Boomer*, 250 Mich App 534, 538; 655 NW2d 255 (2002). The language of the Civil Rights Act and the way the act has been construed by the Michigan Supreme Court as applied to hostile work environment sexual harassment cases compels the conclusion that the act does not have the "realistic potential" to chill constitutionally protected speech. See *Plymouth Twp, supra* at 202. Unconstitutionality is not clearly apparent to us.[11] *Caterpillar, supra* at 413.

We once again affirm the jury's verdict with regard to the sexual harassment claim.

---

[11] Like our anti-stalking law, MCL 750.411h and 750.411i, the prohibitions against sexual harassment contained in our civil rights statute do not unconstitutionally infringe on free speech rights. See *Staley v Jones*, 239 F3d 769, 784-788 (CA 6, 2001) (discussing anti-stalking law).