*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THERESA STORCK, Guardian of IVAN
WILLIAMS, JR., a medically incapacitated
individual,

UNPUBLISHED
March 4, 2021

        Plaintiff-Appellant,

v

No. 349718
Washtenaw Circuit Court
LC No. 18-000702-NI

WASHTENAW INDEPENDENT SCHOOL
DISTRICT,

        Defendant,

and

KELLI VANBUREN and WASHTENAW
INTERMEDIATE SCHOOL DISTRICT,

        Defendants-Appellees.

Before: SWARTZLE, P.J., and RONAYNE KRAUSE and RICK, JJ.

PER CURIAM.

Plaintiff, Ivan Williams, Jr., through his guardian, Theresa Storck, appeals as of right the trial court's order dismissing his tort claims pursuant to MCR 2.116(C)(7) (governmental immunity). We affirm.

Plaintiff has cerebral palsy, intellectual disabilities, and his right side is non-functional. He is confined to a wheelchair. Defendant Kelli VanBuren is a teacher's assistant at High Point High School. On the date plaintiff suffered his injuries, defendant was to work with plaintiff. That day, plaintiff and other students were returning by bus from a sporting event at the University of Michigan. Defendant had just unloaded plaintiff from a parked bus upon returning to the high school. Defendant pushed plaintiff's wheelchair toward an inclined sidewalk leading to the school.

-1-

She turned his wheelchair to face the bus near the sidewalk apron[1], and applied the brakes. Defendant then went back to the bus to sign a transportation log accounting for the students and staff who rode on the bus. While defendant was on the bus looking for a pen to sign the paperwork, plaintiff's brakes disengaged. He rolled from the sidewalk into the side of the bus, and was thrown from his chair. As a result, plaintiff sustained several injuries, including a fractured right femur.

Subsequently, plaintiff, through his guardian, filed suit alleging gross negligence against VanBuren and violations of the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*., against Washtenaw Intermediate School District (WISD).[2] The trial court found no evidence of gross negligence and dismissed plaintiff's claims on the basis that defendants were immune under the governmental liability for negligence act, also known as the government tort liability act (GTLA), MCL 691.1401 *et seq*. The trial court did not explicitly address the ADA claims when it granted defendants' motion for summary disposition. This appeal followed.

On appeal, plaintiff argues that the trial court erred by dismissing plaintiff's claims on the basis of the erroneous finding that her conduct did not rise to the level of gross negligence. We disagree.

## I. STANDARD OF REVIEW

We review de novo a trial court's decision to grant summary disposition. *Bowden v Gannaway*, 310 Mich App 499, 503; 871 NW2d 893 (2015). Summary disposition under MCR 2.116(C)(7) is permitted "because of release, payment, prior judgment, [or] immunity granted by law . . . ." MCR 2.116(C)(7). "When it grants a motion under MCR 2.116(C)(7), a trial court should examine all documentary evidence submitted by the parties, accept all well-pleaded allegations as true, and construe all evidence and pleadings in the light most favorable to the nonmoving party." *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015) (quotation marks and citation omitted). "Unlike a motion under subsection (C)(10), a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Id*. If the facts are in contention, "the court may not resolve factual disputes or determine credibility in ruling on a summary disposition motion." *Burkhardt v Bailey*, 260 Mich App 636, 647; 680 NW2d 453 (2004). However, "[i]f the facts are not in dispute and reasonable minds could not differ concerning the legal effect of those facts, whether a claim is barred by immunity is a question for the court to decide as a matter of law." *Blue Harvest, Inc v Dep't of Transp*, 288 Mich App 267, 271; 792 NW2d 798 (2010) (quotation marks and citation omitted).

---

[1] The apron of the sidewalk is the part of the sidewalk closest to the asphalt.

[2] Washtenaw Independent School District is not a party to this appeal because it was removed from the action and replaced with WISD.

## II. ANALYSIS

The GTLA grants governmental agencies immunity from tort liability "if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). It also grants immunity to officers and governmental agency employees if certain requirements are met. MCL 691.1401(2). Our Supreme Court aptly summarized the test and application when a defendant raises the affirmative defense of individual governmental immunity as follows:

> (1) Determine whether the individual is a judge, a legislator, or the highest-ranking appointed executive official at any level of government who is entitled to absolute immunity under MCL 691.1407(5).
>
> (2) If the individual is a lower-ranking governmental employee or official, determine whether the plaintiff pleaded an intentional or a negligent tort.
>
> (3) If the plaintiff pleaded a negligent tort, proceed under MCL 691.1407(2) and determine if the individual caused an injury or damage while acting in the course of employment or service or on behalf of his governmental employer and whether:
>
> (a) the individual was acting or reasonably believed that he was acting within the scope of his authority,
>
> (b) the governmental agency was engaged in the exercise or discharge of a governmental function, and
>
> (c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage. [*Odom v Wayne Co*, 482 Mich 459, 479-480; 760 NW2d 217 (2008).]

In the governmental immunity context, gross negligence means "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). "Immunity from tort liability, as provided by MCL 691.1407, is expressed in the broadest possible language—it extends to immunity to all governmental agencies for *all* tort liability whenever they are engaged in the exercise or discharge of a governmental function." *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 156; 615 NW2d 702 (2000) (citation omitted).

In this case, it is undisputed that VanBuren was not entitled to absolute immunity under MCL 691.1407(5). Therefore, as a lower-ranking governmental employee, it must be determined whether plaintiff pleaded an intentional or negligent tort. Because plaintiff alleged that VanBuren was grossly negligent, it is clear that he pleaded a negligent tort. As there is no dispute that VanBuren was acting in the course of her employment or that she was engaged in the exercise of a governmental function, the only dispute on appeal is whether VanBuren's conduct rose to a level of gross negligence and whether VanBuren met her burden of proof in establishing that she is entitled to governmental immunity as a matter of law. See *Oliver v Smith*, 290 Mich App 678, 684-685; 810 NW2d 57 (2010) ("[I]n order to determine whether defendant is entitled to summary disposition under MCR 2.116(C)(7), the proper inquiry is whether defendant has met [their] burden of proof in establishing that [they are] entitled to governmental immunity as a matter of law.").

As previously noted, the GTLA defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). We have characterized gross negligence "as a willful disregard of safety measures and a singular disregard for substantial risks." *Oliver*, 290 Mich App at 685, citing *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). "It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Tarlea*, 263 Mich App at 90. "Simply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Id*. "If reasonable jurors could honestly reach different conclusions regarding whether conduct constitutes gross negligence, the issue is a factual question for the jury. However, if reasonable minds could not differ, the issue may be determined by a motion for summary disposition." *Oliver*, 290 Mich App at 685. Therefore, it is paramount on a plaintiff to "adduce proof of conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results" because "evidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Maiden*, 461 Mich at 122-123 (quotation marks omitted).

Plaintiff argues that the trial court erred by granting summary disposition because, viewing the evidence in a light most favorable to him, the non-moving party, reasonable jurors could conclude that VanBuren's conduct rose to the level of gross negligence. We disagree.

Plaintiff asserts that VanBuren's decision to leave him "at the top of the incline" of the sidewalk and facing the bus without confirming that his wheelchair brakes were engaged before she went inside the bus constituted conduct from which a reasonable juror could conclude that VanBuren's actions showed a substantial disregard for whether injury resulted. Although plaintiff asserts that he was at the top of the incline on the sidewalk, there is no evidence that supports such an assertion. Further, there is evidence that directly rebuts such an assertion. A staff member present during the incident stated, during her deposition, that there was a slight incline toward the school, but that plaintiff was not positioned all the way up to the school. Moreover, in a different deposition, another staff member stated that she exited the school, walked past VanBuren and plaintiff on the sidewalk, and that VanBuren was applying plaintiff's brakes near the *apron* of the sidewalk. The apron of the sidewalk is the part of the sidewalk closest to the asphalt, which means that it is toward the *bottom* of the incline. One staff member also described that the base of the incline was nearly flat. The deposition testimony indicates that plaintiff was not positioned at the top of the incline, and plaintiff provides no citation to any evidence suggesting that he was. Rather, plaintiff merely contends that VanBuren was grossly negligent by placing him at the top of the incline without any evidence supporting such contention. Factual allegations in the complaint must be accepted as true only if they are not contradicted by evidence submitted by the moving party. *Maiden*, 461 Mich at 119.

Furthermore, several witnesses testified during their depositions that VanBuren locked plaintiff's brakes. VanBuren stated that she locked plaintiff's brakes after she turned him to face the bus. One staff member stated that, as she exited the school, she saw VanBuren locking plaintiff's brakes. The same staff member also stated that plaintiff's brakes must have been locked because he did not immediately start to roll when VanBuren turned to walk toward the bus to sign the paperwork. There is also video evidence of the same staff member stating, soon after plaintiff struck the bus, that VanBuren locked plaintiff's brakes. Again, plaintiff asserts that VanBuren did

-4-

not confirm that his brakes were engaged without any citation to the record of where this fact exists. Even supposing there was some question of how many times VanBuren rechecked plaintiff's brakes, or indeed how many times a person could reasonably do so, all of the witnesses were consistent that VanBuren set plaintiff's brakes. Failing to recheck the brakes might possibly be negligent, but setting the brakes is inconsistent with "a substantial lack of concern for whether an injury results."

Moreover, plaintiff's contention that VanBuren knew that she had to supervise him and that she was supposed to remain within several feet of him overstates her duties as a teacher's assistant. With respect to VanBuren's location, several staff members testified that they were trained to remain in a student's vicinity. However, the teacher or teacher's assistant was not required to stand directly near the student or even necessarily keep a constant eye on the student. Both VanBuren and another staff member indicated that approximately 10 to 15 feet was within a student's vicinity so as to not leave the student unattended. VanBuren testified that, at the time she went to sign the paperwork, plaintiff was approximately 10 feet away. Two other witnesses testified that VanBuren was in plaintiff's vicinity and did not leave him unattended. Additionally, plaintiff was considered a student who was more independent than others and was not required to have a one-on-one assistant. Further, several witnesses testified that supervising students was a team effort and that just because a staff member was assigned to a student did not necessarily mean that the staff member was the only person who could help that student. In other words, there was evidence that, despite the fact that a staff member was assigned to a certain student, there was nothing that precluded that staff member from helping another student or from momentarily taking his or her eyes off the assigned student.

The evidence indicates that VanBuren made the conscious decision to park plaintiff's wheelchair parallel with the incline of the sidewalk to make sure that she or other staff members could see his face. Because plaintiff was a nonverbal student, his facial expressions and sounds were all staff members could rely on. Had VanBuren parked plaintiff perpendicular to the incline or even facing the other way, no one would have been able to tell whether plaintiff was in distress. One staff member indicated that the determination of whether to park a student perpendicular or parallel to the sidewalk also depended on where the student was located on the incline of the sidewalk. As we indicated, "saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness." *Tarlea*, 263 Mich app at 90. The same sentiment holds true with regard to VanBuren's failure to double and triple check to make sure plaintiff's brakes were engaged. "Simply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Id*.

As unfortunate an accident as plaintiff experienced, we find nothing in this record that would support a finding that VanBuren's actions constituted a reckless or willful disregard so as to demonstrate a substantial lack of concern for whether an injury resulted. The evidence supports that VanBuren positioned plaintiff near the apron of the sidewalk, which was described as nearly flat, and faced him toward the bus to allow her and staff members to see plaintiff's facial expressions, and applied his brakes. This certainly does not demonstrate a *substantial lack of concern* or a *reckless or willful disregard* for whether an injury resulted. In hindsight, while it is possible that some of VanBuren's conduct may have amounted to negligence, "evidence of ordinary negligence does not create a material question of fact concerning gross negligence."

*Maiden*, 461 Mich at 122-123 (quotation marks omitted). No reasonable juror could conclude that VanBuren acted with reckless disregard, and the trial court did not err by granting summary disposition under MCR 2.116(C)(7) in favor of VanBuren.

Plaintiff also argues that the trial court erred by dismissing his ADA claims against WISD because the trial court failed to address those claims when it dismissed plaintiff's action. Plaintiff requests that we remand to allow the trial court to address the ADA claims in the first instance. Although the trial court did not address the ADA claims, we find no reason to remand to allow the trial court to address them now. Generally, we "function[] as a court of review that is principally charged with the duty of correcting errors that occurred below and thus should decline to address unpreserved issues." *Burns v Detroit (On Remand)*, 253 Mich App 608, 615; 660 NW2d 85 (2002) (quotation marks and citation omitted). "However, where the lower court record provides the necessary facts, appellate consideration of an issue raised before, but not decided by, the trial court is not precluded." *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443-444; 695 NW2d 84 (2005). Thus, "[t]his Court may address the issue because it concerns a legal question and all of the facts necessary for its resolution are present." *Dell v Citizens Ins Co of America*, 312 Mich App 734, 751 n 40; 880 NW2d 280 (2015).

A motion for summary disposition under MCR 2.116(C)(8) "tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. at 160. Summary disposition is appropriate under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Bennett v Russell*, 322 Mich App 638, 642; 913 NW2d 364 (2018) (quotation marks and citation omitted).

We decide to substantively address the ADA issue because we conclude that the trial court did not err by dismissing the claims. We decide this issue on the basis of the ADA itself and decline to review the Individuals with Disabilities Education Act, 20 USC 1400 *et seq*.

"The ADA was enacted by Congress in part 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.' " *Peden v Detroit*, 470 Mich 195, 201; 680 NW2d 857 (2004), quoting 42 USC 12101(b)(1). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 USC 12132. In other words, to establish a Title II violation of the ADA, a plaintiff must prove that (1) he or she is a qualified individual with a disability, (2) he or she was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, and (3) such exclusion, denial of benefits or discrimination was due to the plaintiff's disability.

In this case, defendants do not challenge that plaintiff was a qualified individual with a disability. Rather, it appears that defendants challenge whether plaintiff was denied the benefits of the school's services, programs, or activities, and, if so, whether such denial or exclusion was on the basis of plaintiff's disability. We conclude that plaintiff failed to establish the existence of either requirement.

Regarding whether plaintiff was excluded from participation or denied the benefits of the school's educational program, plaintiff merely recites that "[t]here is also no dispute that he was qualified to participate in an education program during the relevant time frame." However, the requirement is not whether plaintiff was qualified to participate in the educational program. Rather, the requirement is whether plaintiff was *excluded from participation* in the educational program. Plaintiff concedes that he was provided homebound services after he sustained his injury, but contends that such services do "not preclude a finding that [he] was excluded from participating in (or the benefits of) a qualified program." He then provides a cursory argument about the social benefits that students obtain while in the classroom environment. Again, this misses the requirement of 42 US 12132. Although plaintiff may have missed out on the "social benefits" of the traditional classroom setting, he was otherwise not excluded from the school's educational program. There was evidence that plaintiff's teacher visited him multiple times a week to provide classroom instruction, the very same instruction he would have received had he been in school. Simply stated, plaintiff was not excluded from the educational program that the school offered because a WISD employee provided those services while plaintiff was absent from school.

Turning to the next requirement—that plaintiff was not excluded from the educational program *on the basis* of his disability—plaintiff very clearly asserts that he "was excluded from participation in the program and denied the benefits of that program through the injuries that were inflicted upon him by VanBuren's gross negligence." It is mandatory that plaintiff be excluded from services *on the basis* of his disability to survive summary disposition of a Title II claim under the ADA. See 42 USC 12132 (noting that the denial of services must be by reason of the individual's disability). Because plaintiff straightforwardly asserts that he was excluded from services on the basis of his *injury* as opposed to his *disability*, his ADA claim must fail.

The trial court did not err by granting summary disposition in favor of defendants. Defendants, being the prevailing parties, may tax costs pursuant to MCR 7.219.

Affirmed.

/s/ Brock A. Swartzle
/s/ Amy Ronayne Krause
/s/ Michelle M. Rick

-7-